IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DANA COLEMAN                                                                                                     PLAINTIFF

v.                                                       CIVIL ACTION NO. 2:16-CV-135-KS-MTP

CITY OF HATTIESBURG                                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion to Reconsider [54] filed by Defendant City of Hattiesburg. After considering the submissions of the parties, the record, and the applicable law, the Court finds that this motion is not well taken and should be denied.

## I. BACKGROUND

Plaintiff Dana Coleman ("Plaintiff") was employed by Defendant City of Hattiesburg (the "City") from 2012 until 2016, as the office manager for Municipal Court Judge Jerry Evans ("Judge Evans"). Her position required her to work directly with Faye Hicks ("Hicks"), the municipal clerk. The deputy clerks of the municipal court answered to both Hicks and Plaintiff. Plaintiff and Judge Evans are white. Hicks and most[1] of the deputy clerks are African American.

On September 9, 2016, Plaintiff filed suit in this Court against Defendants the City and former Mayor Johnny Dupree ("Dupree") (collectively "Defendants"), alleging that she had been the victim of racial harassment and bringing claims under Title VII, 42 U.S.C. §§ 1981 and 1983, and state law claims of intentional and negligent infliction of emotional distress. She later filed an Amended Complaint [28], alleging that, because of this ongoing harassment, she was forced to quit her job, and adding a claim of constructive discharge.

---

[1] One deputy clerk was white, but she later quit because of the same type of harassment Plaintiff alleges. (*See* Sherman Declaration [50-5].)

Defendants filed their Motion for Summary Judgment [47] on December 14, 2017. The Court ruled on this motion on January 24, 2018, leaving only the following claims pending against the City:[2] the hostile work environment claim under Title VII, the constructive discharge claim under Title VII, the intentional infliction of emotional distress, and the negligent infliction of emotional distress. The City now challenges the Court's ruling in its Motion to Reconsider [54].

## II. DISCUSSION

### A. Standard of Review

"A motion asking the court to reconsider a prior ruling is evaluated . . . as a motion . . . under Rule 59(e) . . . [when] filed within twenty-eight days after the entry of judgment . . . ." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012). The City's Motion to Reconsider [54] falls within this twenty-eight day time period.

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). There are three grounds for altering or amending a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *Williamson Pounders Architects, P.C. v. Tunica Cnty., Miss.*, 681 F.Supp.2d 766, 767 (N.D. Miss. 2008). The City argues that the Court must reconsider its ruling to correct a clear error of law and prevent manifest injustice.

Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment," *Templet*, 367 F.3d at 478, and they "should not be used to . . . re-urge matters that have already been advanced by a party." *Nationalist Movement v. Town of Jena*, 321 F.App'x 359, 364 (5th Cir. 2009).

---

[2] All claims against Dupree were dismissed.

Reconsideration of a previous order is "an extraordinary remedy that should be used sparingly." *Id.* Before filing a Rule 59(e) motion, parties "should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement" with the Court. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990).

### B. Hostile Work Environment Claim

The City insists that this is a "reverse discrimination" case and implies that the burden in such cases is heavier than those in other Title VII cases. It further contends that the Court should have addressed the hostile work environment claim through analogy to other similar cases and not, as the Court did, evaluate the facts of this case solely on their own merit.

The City gives no supporting law that supports its contention that a "reverse discrimination" case should be more difficult to meet than any other case brought under Title VII, and the Court has never held that a heavier burden exists for what the City calls "the majority class." (Motion to Reconsider [54] at p. 2.)

This belief by the City actually cuts against established precedent by the United States Supreme Court, which has held that "the important purpose of Title VII" is "that the workplace be an environment free of discrimination, where race is not a barrier to opportunity." *Ricci v. DeStefano*, 557 U.S. 557, 580, 129 S. Ct. 2658, 174 L.Ed.2d 490 (2009). To that end, the Supreme Court held that even well-intentioned actions designed to promote minorities in the workplace could be in violation of Title VII if they resulted in unjustified racial discrimination. *See id.* at 585 ("We hold only that, under Title VII, before an employer can engage in intentional discrimination for the asserted purpose of avoiding or remedying an unintentional disparate impact, the employer must have a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action."). Clearly, then, the Supreme Court does

not agree with the City's contention that Title VII does not apply in equal force to those races not in the minority.

Furthermore, the Fifth Circuit has already explicitly rejected the idea that the fact that a plaintiff is not a racial minority changes the analysis for discrimination under Title VII. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000) ("This Court finds that *Singh* marks a retreat from the "racial minority" requirement to the "protected group" requirement for cases of reverse discrimination. Accordingly, we hold that the fact that Byers was not a racial minority in his workplace does not prevent him from making a *prima facie* case of reverse discrimination under Title VII.").

The idea that Plaintiff must meet some higher standard for her hostile work environment claim under Title VII because she is white, then, is wrong.[3]

The Court also does not find the City's complaint that it did not cite enough analogous cases in its Order [53] to be a compelling reason to justify reconsideration. When ruling on a motion for summary judgment, the Court looks to the specific facts of the case, as shown by the evidence adduced by the parties, in order to decide if there is a genuine issue for trial. *See Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010). In its Order [53], the Court carefully examined each element of Plaintiff's hostile work environment claim and the evidence presented for each element before considering all the circumstances in the light most favorable to Plaintiff.[4] (*See* Order [53] at pp. 3-6.) Ultimately, the Court found that Plaintiff had adduced

---

[3] Even if the City were correct in its belief, it never mentioned that Plaintiff may have had a higher burden in its original brief, and the Court does not consider arguments to originally presented when deciding a motion under Rule 59(e).
[4] This was a stark contrast to how the City presented its arguments against the claim in its original brief, as the City only recited the elements and did not address them specifically. The City also did not fairly consider all of Plaintiff's evidence as the Court is required to do on summary judgment.

enough evidence[5] for a genuine dispute of material fact to exist as to the elements of her claim, and the Court denied summary judgment. Though the City clearly disagrees with the Court's ruling, it has pointed to no error of law committed by the Court other than its baseless argument that reverse discrimination suits should be judged more harshly and its belief that the Court should have cited more cases with analogous facts to support its ruling.[6] The fact that a party might disagree with the Court's ruling is not grounds for reconsideration. *See Atkins*, 130 F.R.D. at 626.

The Court therefore finds that the City has not shown that reconsideration of the Court's ruling as to Plaintiff's hostile work environment claim is warranted.

### C. Wage Discrimination Claim

The City argues that the Court "considered inadmissible wage discrimination evidence" that was inappropriate because the wage discrimination claim was dismissed. First of all, the evidence considered, the fact that Judge Evans told Plaintiff that she could not complain about her extra duties because she was white, was not produced by Plaintiff in support of a wage discrimination claim. In fact, as pointed out in the Court's Order [53], Plaintiff conceded any wage discrimination claim by presenting no argument or evidence as this claim. (*See* Order [53] at p. 3.) Second of all, there is nothing in the rules of evidence that would prevent the same piece of evidence to be offered in support of two different claims. Finally, even if this piece of evidence were not considered by the Court, it is merely cumulative of the other evidence the Court considered in deciding whether there was evidence that the harassment alleged was the result of

---

[5] The Court, of course, did not make any credibility determinations regarding this evidence nor did it weigh it against the evidence produced by the City.
[6] The Court would note that the City did not cite any cases with facts analogous to the case at bar in support of its original motion. The cases cited by the City that they contended were "analogous" were actually quite distinguishable as they involved isolated and infrequent comments that differed from the type of harassment alleged by Plaintiff.

racial animus. The Court therefore does not find that the City's argument that it made an error in considering this evidence persuasive and will not reconsider its previous Order [53] on this basis.

### D.     Impermissible Fact Findings

The City argues that the Court made an impermissible factual finding that there was no dispute that the City was aware of the harassment that Plaintiff allegedly underwent. What the Court actually held was that there was no dispute that Plaintiff had met the fourth element of her hostile work environment claim, which required her to adduce evidence showing that her employer, the City, knew about the harassment. (*See* Order [53] at p. 5.)[7] This is a true statement. Not only can the City not argue that Plaintiff produced no evidence as to this element, the City *did not* argue this in its original motion. This element of Plaintiff's claim went wholly unaddressed and undisputed by the City. The Court will not reconsider its previous ruling on arguments not made by the City in its original motion.

### E.     Constructive Discharge Claim

The City argues that the Court should have done a more in depth analysis of Plaintiff's constructive discharge claim. When ruling on this claim, the Court went as in depth as the City did in its original brief. In the City's Memorandum in Support [48] of its motion, it dedicated three paragraphs to this claim. The first paragraph was a two sentence recitation of the claim's elements. (*See* Memo. in Support [48] at pp. 12-13.) The second paragraph was one sentence long and stated that Plaintiff "must show a greater degree of harassment" under this claim than she was required to under her hostile work environment claim. (*See id.* at p. 13.) The final paragraph was also a sentence long and merely stated, "Because Coleman's hostile work environment claim fails, her

---

[7] The Court admits that the wording used in its Order [53] is not as clear as it could be.

6

constructive discharge claim must also fail." (*Id.*) The Court rejected this argument because it did not find that Plaintiff's hostile work environment failed. (*See* Order [53] at p. 6.)

The City here seems to be faulting the Court for not *sua sponte* raising issues that might be fatal to Plaintiff's constructive discharge claim. If the City wanted this claim analyzed in more detail, it had the burden to raise those issues in its original motion. The Court will not reconsider its previous ruling based on arguments that could and should have been brought in the original briefing. *See Templet*, 367 F.3d at 478.

### F. Emotional Distress Claims

The City also argues that the Court did not include sufficient citations to cases with analogous facts when denying summary judgment on the intention and negligent infliction of emotional distress claims brought by Plaintiff. As with the constructive discharge claim, the Court took its cue from the City's arguments when analyzing these claims.

The City cited one case, *Doughty v. Nachez-Adams School District*, in its brief arguments as to these claims. No. 5:17-CV-43-KS-MTP, 2017 WL 4286395 (S.D. Miss. Sept. 27, 2017). In its arguments for summary judgment on the intentional infliction of emotional distress claim, the City cited *Doughty* for the contention that such claims do not lie in ordinary employment disputes. (*See* Memo. in Support [48] at p. 16.) As the Court pointed out in its Order [53], though the City quoted *Doughty* for this contention, it ignored the very next sentence in that opinion, which held that claims for intentional infliction of emotional distress could be brought in employment disputes involving "a pattern of deliberate, repeated harassment over a period of time." *Doughty*, 2017 WL 4286395 at *3 (quoting *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So.2d 845, 851 (Miss. 2001)). Because the City made no argument as to why the evidence of harassment Plaintiff

7

adduced for her hostile work environment claim was insufficient to support an intentional infliction of emotional distress claim, the Court denied summary judgment.

Similarly, the City cited only *Doughty* again in arguing that Plaintiff's negligent infliction of emotional distress claim failed because she had not identified a health expert that would testify that she suffered physical injury as a result of the City's actions. (*See* Memo. in Support [48] at pp. 16-17.) The Court noted that *Doughty* did not stand for the contention that Plaintiff needed a health expert's testimony to establish a necessary element but only that evidence of a physical injury were necessary. (*See* Order [53] at pp. 6-7.) The Court then proceeded to quote the Mississippi Supreme Court's decision in *Wilson v. General Motors Acceptance Corp.*, which held that "some sort of physical manifestation of injury or demonstrable physical harm" was necessary for a negligent infliction of emotional distress claim. 883 So.2d 56, 65 (2004) (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1209 (Miss. 2001)). The Court found that Plaintiff had produced enough evidence in the form of letters from her physicians to create a genuine issue for trial.

The City in its Motion to Reconsider [54] now offers much more argument as to why these emotional distress claims should fail, but these arguments were not presented in its original motion. Because the Court does not consider arguments that could have been made but were not, the previous ruling will not be reconsidered on this basis. *See Templet*, 367 F.3d at 478.

Because none of the City's arguments justify the extraordinary remedy of reconsideration, the Court will **deny** the Motion to Reconsider [54].

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Reconsider [54] is **denied**.

8

SO ORDERED AND ADJUDGED, on this, the 13th day of February, 2018.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE